Joseph R. Ganley (5643)
Patricia Lee (8287)
**HUTCHISON & STEFFEN, LLC**
10080 W. Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile (702) 385-2086
jganley@hutchlegal.com
plee@hutchlegal.com

Dennis D. Leone (*Pro Hac Vice* forthcoming)
Jonathan K. Stitt (*Pro Hac Vice* forthcoming)
**SHANKMAN LEONE, P.A**.
707 N. Franklin Street, 5th Floor
Tampa, Florida 33602
Telephone: (813) 223-1099
dleone@shankmanleone.com
jstitt@shankmanleone.com

*Attorneys for Audio Visual Services Group, Inc. dba PSAV Presentation Services*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AUDIO VISUAL SERVICES GROUP, INC. d/b/a PSAV PRESENTATION SERVICES, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VICTOR CHANG, an individual,<br><br>Defendants. | **CASE NO.: 2:15-cv-1449**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

AUDIO VISUAL SERVICES GROUP, INC. d/b/a PSAV PRESENTATION SERVICES ("PSAV"), pursuant to the Federal Rules of Civil Procedure, hereby files its complaint for injunctive relief and damages against VICTOR CHANG ("Defendant") and in support thereof, states as follows:

Page 1 of 16

**Introduction**

1. By this action, PSAV seeks to recover monetary damages from a former employee as a result of his misappropriation of PSAV's confidential and trade secret information. PSAV also seeks injunctive relief against its former employee prohibiting his use of PSAV's confidential and trade secret information.

**Parties**

2. PSAV is a Delaware corporation with its principal place of business at 1700 East Golf Road, Suite 400, Schaumburg, Cook County, Illinois.

3. Upon information and belief, Defendant is an individual residing in Las Vegas, Clark County, Nevada.

**Jurisdiction**

4. This Court has jurisdiction over this action based upon 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

5. Defendant is subject to the jurisdiction of this Court because he is a resident of Clark County, Nevada.

**Venue**

6. Venue is proper in the United States District Court for the District of Nevada – Las Vegas, pursuant to 28 U.S.C. § 1391(a), because Clark County, Nevada, is the county in which all or a substantial part of the events and omissions giving rise to this claim occurred.

**Facts**

*PSAV's Business*

7. PSAV is a leading provider of event technology, audiovisual services, audiovisual equipment rentals, rigging, power distribution, concert sound, staging services, lighting, and

related technical support to hotels, casinos, event production companies, trade associations, convention centers, and corporations (PSAV's "Business").

8. PSAV operates its Business in an extremely competitive environment with a number of national, regional, and local event technology, rigging, and convention services companies vying for the opportunity to produce and stage events, as small as an intimate gathering and as large as a national convention, in venues across the country, including those here in Clark County, Nevada.

9. In an effort to gain competitive advantages over its competitors, PSAV expends substantial time, effort, and resources developing, maintaining, and creating its: (i) institutional knowledge and know-how; (ii) confidential and proprietary information; and (iii) client relationships, among other things. It accomplishes these goals by expending substantial amounts of time, effort, and money, including by providing its employees with specialized training, authorizing, and paying for PSAV employees to develop and strengthen their relationships with PSAV's clients, and creating and offering customized solutions to its clients' needs.

10. Often, the process of developing clients in this industry is lengthy, difficult, and expensive and requires service providers, such as PSAV and its employees, to develop and maintain close personal relationships with their clients. In addition, service providers must have a clear understanding of the clients' needs and preferences and, perhaps most importantly, developing and employing the most efficient and effective way to meet or exceed the clients' technology and equipment needs. PSAV's investment in developing these relationships and solutions provides PSAV with a substantial competitive advantage in the marketplace.

11. As part of its Business, PSAV has spent substantial time, effort, and resources developing, creating, compiling, maintaining, and protecting the unique and customized solutions that PSAV develops to solicit and win clients, as well as meet its clients' needs.

12. PSAV also expends substantial time, effort, and resources developing its and its employees' relationships with its clients in an effort to better understand its clients, their businesses, and their specific needs. These relationships further strengthen PSAV's ability to better serve the clients' needs and often result in improving PSAV's ability to meet those needs by developing unique and specialized solutions for each client.

13. As a result of PSAV's substantial investment of time, effort, and resources necessary to develop and service clients, many client relationships between PSAV and its clients are "near permanent" relationships that result in PSAV providing substantial amounts of services and equipment to those clients every year for extended periods of time.

14. PSAV operates its Business in an extremely competitive industry in which its competitors, including Defendant's current employer, Encore Event Technologies, Inc. ("Encore"), would greatly benefit from both the disclosure of PSAV's Trade Secret Information, as well as the relationships that PSAV and its employees enjoy with PSAV's clients.

*PSAV's Confidential and Trade Secret Information*

15. PSAV's confidential and proprietary information also includes, but is not limited to: PSAV's business format and practices, pricing and commission policies, structures, formulas, and methods; PSAV's financial condition, PSAV's know-how, the terms and conditions of PSAV's agreements with clients, suppliers, and vendors; information developed and maintained over the years relating to PSAV's clients' names, employees and/or representatives, those clients' needs, preferences, requirements, purchasing or sales histories, price structures, and other client-specific information, including the know-how required to best provide services to that client; PSAV's methods and systems to deliver equipment, goods, labor, and services, including proprietary computer software programs developed to assist those efforts; PSAV's client, vendor, consultant, employee, temporary labor, supplier, distributor, and equipment lists, which

include information not contained in the public domain; PSAV's employee, payroll, personnel, consultant, and/or labor records and information; PSAV's strategic, marketing, and business plans, financial and business forecasts, budgets, and other non-public financial information, management policies, training materials, and business strategies; and PSAV's sales programs, tools, forms, processes, and plans, as well as the confidential financial information relating to PSAV's operations and the operations of the hotels, casinos, event production companies, trade associations, convention centers, and corporations with which PSAV does business (collectively, the "Confidential and Trade Secret Information").

16. The Confidential and Trade Secret Information is not generally known to the public or within PSAV's industry because it is not readily ascertainable by independent investigation. It is not ascertainable because PSAV takes reasonable precautions to ensure the confidentiality and secrecy of the Confidential and Trade Secret Information. Such efforts include, among others: PSAV's policies limiting access to the Confidential and Trade Secret Information; requiring the execution of employee guide(s) by persons with access to the Confidential and Trade Secret Information; restricting employees' physical access to the Confidential and Trade Secret Information; securing the Confidential and Trade Secret Information's physical and electronic storage; and limiting distribution of the Confidential and Trade Secret Information only to those employees who need the information to perform their specific job functions.

17. The Confidential and Trade Secret Information has independent economic value to PSAV and its competitors because PSAV's competitors, including Defendant and his current employer, Encore, can utilize this information to, among other things: (a) improve their operations; (b) gain tremendous insight and knowledge regarding PSAV's capabilities and operations; (c) gain an understanding of the terms upon which PSAV will do business with

clients; (d) learn PSAV's client development and sales processes, market analysis, and insight into what services, equipment, and staffing it believes is necessary to support a market, including its clients, hotels, casinos, event production companies, trade associations, convention centers, and corporations within that market; (e) more effectively bid against and compete with PSAV for clients and future opportunities; and, perhaps most importantly, (f) transition the provision of detailed and, at times, complicated audio visual and rigging services and equipment from PSAV to a competitor.

18. PSAV has invested substantial amounts of time and money to develop and refine the systems, procedures, policies, know-how, and capabilities specifically discussed and contained in the Confidential and Trade Secret Information.

### *PSAV's Confidential Relationship with Defendant*

19. PSAV employed Defendant from approximately 2007 through July 20, 2015. Defendant's most recent position was Director of Operations. A position he maintained since 2010. Within the past year, however, PSAV began to groom Defendant for a promotion to Director of Event Technology at one of PSAV's clients' properties, The Cosmopolitan™ Hotel and Casino located in Las Vegas, Clark County, Nevada ("The Cosmopolitan").

20. As Director of Operations for PSAV at The Cosmopolitan, Defendant was increasingly responsible for, among other things, introducing prospective and actual customers of The Cosmopolitan to PSAV and its services, attending sales meetings and calls with and without staff of The Cosmopolitan with prospective and actual customers in an effort to sell PSAV's services and products, soliciting and maintaining relationships with PSAV's clients, including The Cosmopolitan and its guests, requesting audio visual and/or rigging services and products, as well as providing audiovisual and rigging services to PSAV's and The Cosmopolitan's customers and guests.

21. At all material times, PSAV provided Defendant with access to and permitted the use of PSAV's relevant Confidential and Trade Secret Information in an effort to support Defendant's work on behalf of PSAV. As such, Defendant had extensive access to the Confidential and Trade Secret Information.

22. In an effort to protect the substantial time, effort, and resources expended in developing, creating, compiling, and maintaining PSAV's legitimate business interests, including the Confidential and Trade Secret Information and the near permanent relationships PSAV cultivates with its clients, PSAV requires its employees, including Defendant, to acknowledge and agree to PSAV's guidelines and policies prohibiting employees, including Defendant, from describing, disclosing, misappropriating, publishing, taking, transmitting, or using PSAV's Confidential and Trade Secret Information for any purpose other than PSAV's Business.

23. On January 10, 2014, Defendant executed an acknowledgment agreeing that he read and understood PSAV's employee guide, which contains PSAV's policies and practices prohibiting employees from describing, disclosing, misappropriating, publishing, taking, transmitting, or using PSAV's Confidential and Trade Secret Information for any purpose other than PSAV's Business (the "Employee Guide").

24. As evidenced by his execution of the Employee Guide, his daily job responsibilities with PSAV, and his access to and use of the Confidential and Trade Secret Information, Defendant enjoyed a position of trust within and shared a confidential relationship with PSAV that created a fiduciary obligation to PSAV.

*PSAV's Trust in Defendant*

25. In reliance upon his execution of the Employee Guide, among other things, PSAV granted Defendant access to and permitted his use of its Confidential and Trade Secret Information. In addition, PSAV authorized and invested substantial sums of money and

resources in him, thereby allowing him to access and use the Confidential and Trade Secret Information to create and/or continue both close personal relationships with a number of PSAV clients, including The Cosmopolitan and its guests and customers, and provide services and products to those clients in a more efficient and effective manner.  This investment in Defendant and his access to and use of PSAV's Confidential and Trade Secret Information permitted him to develop and implement specialized know-how and solutions.

26. Defendant would not have this opportunity but for his employment with PSAV and his written agreement not to describe, disclose, misappropriate, publish, take, transmit, or use PSAV's Confidential and Trade Secret Information for any purpose other than PSAV's Business.

27. As a result of his employment with PSAV and his access and use of PSAV's Confidential and Trade Secret Information, Defendant developed specialized skills, knowledge, and information.  Those skills, knowledge, and information include PSAV's prospective and existing client's preferences, needs, and budgets, as well as how PSAV and/or one of its competitors, such as Encore, may efficiently and effectively meet or exceed the Customers' preferences, needs, and budgets.

28. The particularized plans and/or processes developed by PSAV during Defendant's employment are unknown to others in the industry and give PSAV a substantial advantage over competitors offering to provide service to PSAV's clients.  As a result of this specialized knowledge, Defendant may and can anticipate PSAV's service and product offerings, service platforms, service and product offerings and pricing, strategic plans, and processes unique to the industry and PSAV's clients and those substantially similar to them.  Such knowledge provides Defendant and his new employer, PSAV's direct competitor, with an unfair advantage that, among other things, will enable Defendant and Encore to more effectively and aggressively

shape their responses to PSAV's potential and existing clients, as well as other third-parties' requests for proposals and bids for future events at The Cosmopolitan or other locations in the Las Vegas market.

*Defendant's Misappropriation of PSAV's Trade Secret Information*

29. Defendant began looking for a new job in or around June 2015.

30. At around that time, without PSAV's knowledge or authority and in direct violation of his fiduciary duty to PSAV and Nevada's Uniform Trade Secrets Act, as well as the terms and conditions of his employment, including those contained in the Employee Guide, Defendant began to surreptitiously access and transmit electronic files containing PSAV's Confidential and Trade Secret Information. Specifically, Defendant forwarded the following electronic communications containing PSAV's Confidential and Trade Secret Information from his PSAV employee email account identified as vchang@psav.com to his personal email account of vic702@gmail.com (collectively, the "Communications"):

 a. Saturday, June 20, 2015 at 10:50 a.m.
 b. Saturday, June 20, 2015 at 10:53 a.m.
 c. Tuesday, June 23, 2015 at 7:30 p.m.
 d. Thursday, June 25, 2015 at 11:58 a.m.
 e. Friday, June 26, 2015 at 3:44 p.m.
 f. Friday, June 26, 2015 at 8:22 p.m.
 g. Monday, June 29, 2015 at 12:05 p.m.
 h. Monday, June 29, 2015 at 4:15 p.m.
 i. Tuesday, June 30, 2015 at 2:30 p.m.
 j. Tuesday, June 30, 2015 at 3:38 p.m.
 k. Wednesday, July 1, 2015 at 11:06 a.m.
 l. Wednesday, July 1, 2015 at 6:19 p.m.
 m. Wednesday, July 1, 2015 at 6:21 p.m.
 n. Wednesday, July 1, 2015 at 6:25 p.m.
 o. Wednesday, July 1, 2015 at 6:25 p.m.

31. Each of the Communications contained an attachment or other information that comprised PSAV's Confidential and Trade Secret Information, including information regarding specific PSAV customers, upcoming events, profit and loss information, sales techniques and

protocols, and price comparisons. PSAV did not know, authorize, or permit Defendant to engage in the Communications and the Communications were not related to Defendant's job responsibilities or PSAV's Business. Rather, the Communications were a deliberate and willful misappropriation of PSAV's Confidential and Trade Secret Information.

32. At the time of Defendant's misappropriation of PSAV's Confidential and Trade Secret Information, Defendant knew that the Confidential and Trade Secret Information was acquired under circumstances giving rise to a duty to maintain its secrecy, that he was using improper means to acquire it, and that he had a duty to maintain its secrecy.

33. In an effort to conceal his actions, Defendant continued to engage in his day-to-day employment duties and responsibilities without any hint or suspicion of wrong-doing or impropriety.

34. On July 17, 2015, Defendant advised his Regional Team Leader for PSAV, Mr. Raymond Trujillo, that he was resigning his employment with PSAV to accept employment with PSAV's direct competitor, Encore, as a Director of Event Technology at the Venetian® Las Vegas.

35. Defendant refused PSAV's request to reconsider his resignation of employment and left PSAV's employment on July 20, 2015.

*Irreparable Harm to PSAV*

36. Defendant's willful misappropriation of PSAV's Confidential and Trade Secret Information irreparably harms PSAV because, among other reasons, it provides Defendant and his current employer, PSAV's direct competitor, with direct and unfettered access to PSAV's confidential and proprietary information which can be used in an effort to more effectively compete and steal business and business opportunities from PSAV without PSAV's knowledge or consent. It further compromises the integrity of PSAV's Confidential and Trade Secret

Information by allowing Defendant, as well as his current employer, to realize and enjoy the benefit of the substantial amount of time, money, and effort PSAV invests in developing and maintaining its Confidential and Trade Secret Information.

37. In addition, the misappropriation of PSAV's Confidential and Trade Secret Information violates the public's interest in safeguarding a business and employer's confidential and proprietary information, including their historical institutional knowledge and proprietary sales and customer service techniques.

38. The restrictions on the misappropriation of the Confidential and Trade Secret Information, or on Defendant's wrongfully benefiting from his misappropriation of PSAV's Confidential and Trade Secret Information, are also not contrary to applicable public policy.

39. PSAV has no adequate remedy at law to protect it from Defendant's wrongful use and/or disclosure of PSAV's Confidential and Trade Secret Information to, among others, his current employer and PSAV's direct competitor, Encore.

*Defendant Will Not Suffer Undue Hardship*

40. Enforcement of the protection afforded by the Nevada Uniform Trade Secrets Act will not cause undue hardship on Defendant because it is very narrow and limited in scope and does not place a substantial limitation on Defendant's opportunities for employment or from maintaining his livelihood, or inhibit Encore's ability to compete in the marketplace. Instead, it merely requires Defendant to comply with the law and compete fairly on a level playing field.

**General Allegations**

41. All conditions precedent to this action were performed, occurred, or waived.

42. PSAV has hired the undersigned counsel to enforce its rights and has agreed to pay reasonable attorneys' fees related to this litigation.

## FIRST CAUSE OF ACTION
### Violation Of Nevada Uniform Trade Secrets Act

43. PSAV re-alleges paragraphs one through 42 of this Complaint as if fully set forth herein.

44. PSAV created and maintained the Confidential and Trade Secrets Information as a result of substantial time, labor, skill, and money. As such, that information is subject to trade secret protection under Nevada law.

45. Defendant acquired PSAV's Confidential and Trade Secret Information as a result of a confidential relationship and under circumstances in which he was vested with extreme trust and confidence by PSAV, and under which he had a duty to maintain the secrecy of the information and limit its use.

46. Defendant willfully misappropriated, and intends to continue willfully misappropriating, PSAV's Confidential and Trade Secret Information by transmitting it to his personal electronic mail address, and disclosing it outside of PSAV, including to Encore, PSAV's direct competitor, and has used and continues to use them to secure business, without PSAV's express or implied consent.

47. Defendant's disclosure and use of PSAV's Confidential and Trade Secret Information constitute a willful misappropriation under the Nevada Uniform Trade Secrets Act.

48. PSAV has suffered damages as a direct and proximate result of the Defendant's misappropriation of its Confidential and Trade Secret Information.

## SECOND CAUSE OF ACTION – PLEADED IN THE ALTERNATIVE
### Breach of Fiduciary Duty

49. In the event this Court should determine that any or all of PSAV's Confidential and Trade Secret Information is not subject to Nevada's Uniform Trade Secret Act, PSAV re-

alleges paragraphs one through 28 and 32 through 42 of this Complaint as if fully set forth herein.

50. At all material times including June and July 2015, Defendant's relationship with PSAV gave rise to a fiduciary duty of loyalty that required him, as an employee, to act in PSAV's best interests and not otherwise act in a manner detrimental to PSAV.

51. Despite this fiduciary duty of loyalty, Defendant forwarded the following electronic communications containing PSAV's Confidential and Trade Secret Information from his PSAV employee email account identified as vchang@psav.com to his personal email account of vic702@gmail.com (collectively, the "Communications"):

    a. Saturday, June 20, 2015 at 10:50 a.m.
    b. Saturday, June 20, 2015 at 10:53 a.m.
    c. Tuesday, June 23, 2015 at 7:30 p.m.
    d. Thursday, June 25, 2015 at 11:58 a.m.
    e. Friday, June 26, 2015 at 3:44 p.m.
    f. Friday, June 26, 2015 at 8:22 p.m.
    g. Monday, June 29, 2015 at 12:05 p.m.
    h. Monday, June 29, 2015 at 4:15 p.m.
    i. Tuesday, June 30, 2015 at 2:30 p.m.
    j. Tuesday, June 30, 2015 at 3:38 p.m.
    k. Wednesday, July 1, 2015 at 11:06 a.m.
    l. Wednesday, July 1, 2015 at 6:19 p.m.
    m. Wednesday, July 1, 2015 at 6:21 p.m.
    n. Wednesday, July 1, 2015 at 6:25 p.m.
    o. Wednesday, July 1, 2015 at 6:25 p.m.

52. Each of the Communications contained an attachment or other information that comprised PSAV's Confidential and Trade Secret Information, including information regarding specific PSAV customers, upcoming events, profit and loss information, sales techniques and protocols, and price comparisons. PSAV did not know, authorize, or permit Defendant to engage in the Communications and the Communications were not related to Defendant's job responsibilities or PSAV's Business. Rather, the Communications were a deliberate and willful effort to take PSAV's Confidential and Trade Secret Information.

53. Defendant's efforts to take PSAV's Confidential and Trade Secret Information through the Communications were not in PSAV's best interests but, rather, were Defendant's personal gain.

54. Defendant's conduct constitutes a breach of his fiduciary duty of loyalty to PSAV.

WHEREFORE, PSAV hereby respectfully requests that this Court enter judgment against Defendant Victor Chang and in favor of PSAV for:

1. preliminary and permanent injunctive relief to prevent him, and all persons and entities acting on his behalf, in concert with him, or under his control:

    a. from continuing to misappropriate PSAV's Confidential and Trade Secret Information;

    b. from describing, disclosing, misappropriating, publishing, taking, transmitting, or using PSAV's Confidential and Trade Secret Information for any purpose;

    c. from altering, deleting, modifying, or removing any correspondence, data, documents, electronic mail, or other items from any and all personal data device, removable storage device, hard drive, communication devices, telephone, smartphone, tablet, portable or laptop computer, home computer, or other electronic device;

    d. to recall and deliver to PSAV all original and copies, actual or electronic, in Defendant's possession, custody, or control, of any and all correspondence, documents, and other material containing PSAV's Confidential and Trade Secret Information; and

     e. to allow PSAV, at a reasonable time, to enter Defendant's premises and work location to identify all email accounts and all personal data device, removable storage device, hard drive, communication devices, telephone, smartphone, tablet, portable or laptop computer, home computer, or other electronic device to which he has access so that PSAV may inspect all of his electronic devices and files to confirm that PSAV's Confidential and Trade Secret Information is not contained in any actual or electronic file or transferred from any electronic device to any third-person or entity.

2. PSAV's money damages;

3. Account and pay over to PSAV all gains, profits, and advantages derived by Defendant as a result of his misappropriation of PSAV's Confidential and Trade Secret Information;

4. Exemplary damages in an amount not greater than twice the amount of damages permitted PSAV by reason of Defendant's willful and malicious violation of Nevada's Uniform Trade Secrets Act;

5. PSAV's taxable costs incurred herein;

6. PSAV's reasonable attorneys' fees; and

/ / /

/ / /

/ / /

/ / /

7. All other relief this Court deems just and proper.

Respectfully submitted this 29th day of July, 2015.

**HUTCHISON & STEFFEN, LLC**

/s/ Patricia Lee

_____
Joseph R. Ganley (5643)
Patricia Lee (8287)
10080 W. Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile (702) 385-2086
jganley@hutchlegal.com
plee@hutchlegal.com

and

Dennis D. Leone, Esq. (Florida Bar No. 069401)
Jonathan K. Stitt, Esq. (Florida Bar No. 0110641)
**Shankman Leone, P.A.**
707 N. Franklin Street, 5th Floor
Tampa, Florida 33602
Telephone (813) 223-1099
Facsimile (813) 223-1055
dleone@shankmanleone.com
jstitt@shankmanleone.com

*Attorneys for Plaintiff, Audio Visual Services Group, Inc. d/b/a PSAV Presentation Services*